UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------

ELVERT S. BRISCOE, JR., : CASE NO. 1:18 CV 2417
:
    Plaintiff, :
:
vs. : OPINON & ORDER
:
GARY MOHR, ODRC DIRECTOR, *et al*., :
:
    Defendants. :
:
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

**Introduction**

*Pro se* plaintiff Elvert S. Briscoe, Jr., an Ohio inmate incarcerated in the Toledo Correctional Institution, has filed this civil rights action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction (ODRC) Director Gary Mohr, and multiple officials and a fellow inmate at the Grafton Correctional Complex (GCC) where he was previously incarcerated. (Doc. No. 1.) In addition to Director Mohr, the plaintiff sues GCC Warden Lashann Eppinger, Deputy Wardens Keith Foley and Jennifer Gillece, Investigator Steve Weishar, Rules Infraction Board Chairman Nicholaus Costello, and inmate Mark "Marcello" Hurayt.

The plaintiff's action pertains to a 2016 Rules Infraction Board (RIB) decision finding him guilty of attempting and planning an escape, which resulted in an increase in his security-level status and transfer to a maximum security prison. The plaintiff has been granted leave to proceed *in forma pauperis* by separate order. For the reasons stated below, his action is dismissed.

**Background**

The events giving rise to the action occurred while the plaintiff was incarcerated in the Grafton Reintegration Center, which is part of GCC, where the plaintiff was a Program Aid in the

computer lab. The plaintiff alleges that in June 2016, he observed and "counseled" fellow inmate Hurayt (who he identifies in his complaint as a confidential informant, or "CI," for defendants Weishar, Foley, Gillece, and Eppinger) for doing unauthorized legal work on a computer and for using an unauthorized USB flash drive. (*Id.* at ¶¶ 14-17.) The CI was removed from the computer lab as result of the plaintiff's intervention and, a month later, was found to be in possession of the unauthorized flash drive and disciplined. The plaintiff alleges the CI told prison staff he got the flash drive from the plaintiff in order to get out of his contraband ticket. The plaintiff "was stripped searched and shookdown" as a result of the CI's accusation, but he was cleared when no contraband was found in his possession. (*Id.* at ¶ 20.)

The plaintiff alleges he told prison staff the CI made the false accusation against him in retaliation for his having had the CI removed from the computer lab. And he alleges that because he feared the CI was "going to make another false accusation" against him, he sent a kite to defendant Weishar on July 11, 2016, asking that the CI be charged with giving a false report. (*Id.* ¶¶ 21, 22.) No action was taken by prison officials in connection with this request, but on July 13, 2016, defendant Weishar placed the plaintiff and three other inmates under investigation as result of other, confidential information the CI had provided to prison officials: that the plaintiff and the three other inmates were planning an escape involving google maps and rubber gloves. (*Id.* at ¶ 23.)

The plaintiff filed additional kites in which he asserted that the CI's escape allegations against him were false and retaliatory and asking to meet with defendants Weishar, Eppinger, Foley, and Gillece in order to present all of the facts. He also asked that all the parties involved be required to take lie detector or voice stress analysis tests. (*See id*. at ¶ 24; Doc. No. 1-4 at 4, 6, 8.)

Case No. 1:18CV2417
Gwin, J.

On September 1, 2016, the plaintiff and the three other implicated inmates took Computer Voice Stress Analysis tests (CVSAs). (Doc. No. 1 at ¶ 41.) On October 3, 2016, the plaintiff was informed of the results of the tests and charged with attempting or planning escape in a written conduct report. (*See* Doc. No. 1-3.) The report, signed by defendant Weishar, stated that an investigation was undertaken to verify the information provided by the CI regarding a plan to escape, and that the CI's CVSA showed no deception while the plaintiff "showed deception when asked about a plan to breach the security fence." (*Id*.)

An RIB hearing on the charges was held on October 7, 2016 before RIB Chairman Costello and Kai Adams. (Doc. No. 1 at ¶ 57.) Although the plaintiff "was not allowed to question about CVSAs" at his hearing, he alleges "ample evidence was put in the record that CVSAs are unreliable." (*Id*. at ¶ 58.) In addition, he alleges he "presented testimony and documents." (*Id.* at ¶ 59.) After a "split 1-1 vote" on the charges, defendant Eppinger appointed defendant Foley to the RIB panel, who found the plaintiff guilty. (*Id*. at ¶¶ 60, 61.) The RIB report states the plaintiff was found guilty on the basis of administered CVSA tests. (Doc. No. 1-5.) As a result of the conduct violation, the plaintiff's security-level status was increased, and he was transferred to a maximum security prison (the Southern Ohio Correctional Facility) from November 7, 2016 to November 7, 2017, and deprived of other privileges and property. (Doc. No. 1 at ¶¶ 68, 80-82.)

The plaintiff appealed the RIB's decision, challenging the partiality of defendant Foley, the "fundamental fairness" of using CVSAs, and the refusal of the RIB to hear other e-mails and evidence he had requested. Defendants Eppinger and Mohr denied the plaintiff's appeals. (*Id*. at ¶ 62.)

The plaintiff filed this action on October 18, 2018, contending he was wrongly found guilty of the conduct charges. He alleges defendants Weishar, Eppinger, Foley, Gillece, Costello, and the CI violated his "Substantive and Procedural Due Process rights under the Fourteenth

-3-

Case No. 1:18CV2417
Gwin, J.

Amendment" in connection with the charges, his RIB hearing, and his subsequent transfer to the Southern Ohio Correctional Facility. In addition, he alleges that the prison official defendants unlawfully retaliated against him by bringing the charges after he reported retaliation by the CI, violated his Equal Protection rights by investigating the CI's allegations against him but not his against the CI, and failed to protect him from the CI's false "attacks." He also alleges he was subjected to cruel and punishment when he was forcefully placed in restrictive housing pending investigation on the conduct charges and transferred and confined in the maximum security Southern Ohio Correctional Facility. (*See id*. at ¶¶ 103-117, "Legal Claims.") In addition to declaratory and monetary relief, the plaintiff seeks injunctive relief ordering that the defendants "cease and desist" the use of CVSAs, reinstate him to Level 1 security status and the Video Apprenticeship Program, transfer him to an appropriate Level 1 facility, and clear his disciplinary record of "any and all references of a plan to escape." (*Id*. at ¶ 121.) He has filed a Motion for an "Order to Show Cause for a Preliminary Injunction" requesting the same injunctive relief. (Doc. No. 3.)

## Standard of Review

Although *pro se* pleadings are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), federal district courts are required under 28 U.S.C. § 1915(e)(2)(B) to screen all *in forma pauperis* actions filed in federal court, and to dismiss before service any such action that the Court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010). To survive a dismissal for failure to state a claim under § 1915(e)(2)(B, a *pro se* complaint must contain sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *Hill*, 630 F.3d at 470-71 (holding that the dismissal

-4-

Case No. 1:18CV2417
Gwin, J.

standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) govern dismissals for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)).

**Discussion**

In order to state a claim for relief under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). Upon review, the court finds that the plaintiff's complaint fails to allege any plausible constitutional claim on which he may be granted relief against any defendant under § 1983.

First, the plaintiff has not alleged any plausible procedural due process claim. A prison disciplinary proceeding does not give rise to a constitutionally-protected liberty interest triggering constitutional due process protections unless the discipline imposed results in a withdraw of good time credits or constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The prison discipline of which the plaintiff complains does not trigger constitutional due process protection. The Sixth Circuit has made clear that sentences imposed on a prisoner stemming from an RIB disciplinary conviction and resulting in an increase in the plaintiff's security classification do not constitute an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *See, e.g., Workman v. Wilkinson*, 23 F. App'x 439, 441, 2001 WL 1450709, at *1 (6th Cir. 2001) (placement of state prisoner on administrative control and in a maximum security classification because of a misconduct offense resulting in transfer to a maximum security prison did not constitute an atypical and significant hardship, and did not infringe on prisoner's due process rights, since heightened security status is one of the ordinary incidents of prison life and the placement did not inevitably affect the duration of prisoner's sentence; the effect of the disciplinary

conviction on prisoner's chances for parole was a collateral consequence and did not create a liberty interest). This is so even where the plaintiff alleges he was falsely accused of the misconduct. *See Jones v. McKinney*, 172 F.3d 48, 1998 WL 940242 at *1 (6th Cir. Dec. 23, 1998) ("even if the disciplinary report was false . . . a prisoner has no constitutionally protected immunity from being wrongly accused"); *Mujihad v. Harrison*, 172 F.3d 49, 1998 WL 940243, at *2 (6th Cir. Dec. 23, 1998) ("the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable pursuant to § 1983"). *See also Reeves v. Mohr*, No. 4:11 CV 2062, 2012 WL 275166, at *2 (N. D. Ohio Jan. 31, 2012) (finding no plausible due process claim where a prisoner alleged he was charged with a conduct violation as a result of false allegations by another inmate and was found guilty of the charges on the basis of fabricated polygraph tests).

Even if the discipline of which the plaintiff complains were sufficient to trigger constitutional due process protections, the plaintiff's complaint on its face indicates he received all the process the Constitution requires. Courts have a very limited ability to review prison disciplinary determinations. Prison disciplinary proceedings meet minimal due process requirements if the prisoner is given advance written notice of charges at least 24 hours prior to the disciplinary hearing, a written statement of the evidence relied on and the reasons for the disciplinary action, the prisoner is allowed to call witnesses and present documentary evidence in his defense, and "some evidence" supports the disciplinary board's decision to find him guilty of a particular offense. *See Blevins v. Wilkinson*, 999 F.2d 539, 1993 WL 262469, at *1 (6th Cir. July 8, 1993). The plaintiff's allegations indicate he received all of these protections. Although the plaintiff disagrees with the RIB's reliance on CVSAs, they constitute "some evidence" supporting the RIB's determination. *See Superintendent, Massachusetts Correctional Institution at Walpole*, 472 U.S. 445, 455-56 (1985) (some evidence is "any evidence in the record that could support the

Case No. 1:18CV2417
Gwin, J.

conclusion reached by the disciplinary board"). This court cannot redetermine the plaintiff's guilt or innocence or substitute its own judgment for that of the RIB.

Second, because some evidence supports the RIB's determination that the plaintiff was guilty of the conduct charged, he has failed to allege plausible retaliation and substantive due process claims arising from the disciplinary charges against him. *See, e.g., Metcalf v. Veita*, 156 F.3d 1231, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) ("Where disciplinary charges result in guilty findings supported by some evidence, a prisoner cannot state a claim of retaliation"); *Mujihad v. Harrison*, 172 F.3d 49, 1998 WL 940243, at *2 (6th Cir. Dec. 23, 1998) (holding that a plaintiff's retaliation claim "is blocked by the disciplinary board's findings of guilt" and that he had "not presented sufficient evidence to support a substantive due process claim" because "the only evidence" he offered of retaliation was that disciplinary charges against him "occurred relatively close in time to his filing of grievances").

Third, the plaintiff's complaint does not allege a plausible equal protection claim. Inmates are not a suspect class, and the Equal Protection Clause does not prohibit prison officials from treating different groups of inmates in different ways. *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005). An inmate asserting a violation of equal protection must demonstrate not only that he was treated differently from others similarly situated to him in all respects, but that the different treatment was not rationally related to any legitimate government interest. *Heard v. Quintana*, 184 F. Supp.3d 515, 522 (E.D. Ky. 2016).

The plaintiff complains that prison officials treated the CI more favorably than him because they investigated and pursued the CI's allegations of misconduct against him, but not his allegations that the CI made false reports. However, the plaintiff has not alleged facts plausibly suggesting there was no rational basis for the prison officials' investigatory decisions. The Sixth Circuit has acknowledged that "[t]hreats to prison security presumably demand more immediate

Case No. 1:18CV2417
Gwin, J.

attention that the threats presented by other categories. . . ." *Harbin-Bey*, 420 F.3d at 577. Further, the plaintiff has not alleged facts indicating that he was similarly-situated to the CI in all respects. He and the CI were found guilty and disciplined for different conduct; he for planning and escape and the CI for possessing a contraband flash drive. (*See* Doc. No. 1 at ¶ 71) ("Upon information and belief the CI was charged and placed in seg for possession of a usb after transfer from GCI . . . .").

In short, the plaintiff's allegations are insufficient to support a plausible equal protection claim because they do not support a plausible inference that he was treated differently than the CI without any rational basis, and they indicate he was treated similarly to the three other inmates who were accused of the same misconduct he was.

Fourth, the plaintiff's allegations do not rise to the level of a cognizable Eighth Amendment violation. To prove an Eighth Amendment claim, an inmate must show that he has been deprived of the "minimum civilized measures of life's necessities." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008), quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Alleging that prison conditions "are restrictive and even harsh" does not suffice because such conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. Instead, "extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and internal quotation omitted.) Additionally, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9–10.

Case No. 1:18CV2417
Gwin, J.

The plaintiff's allegations that he was "forcefully" restrained and placed in restricted housing at GCI pending investigation on escape charges, and that he was subsequently subjected to restrictive and harsh conditions while confined in "one of the most notorious" maximum security prisons (the Southern Ohio Correctional Facility) (*see* Doc. No. 1 at ¶¶ 74, 81) are insufficient to support plausible Eighth Amendment claims. The plaintiff's allegations do not support plausible inferences that he personally was subjected to conditions that deprived him of the minimum civilized measures of life's necessities, or was subjected to excessive force or an unnecessary and wanton infliction of pain in the prison context.

Finally, the plaintiff's complaint fails to state a plausible Eighth Amendment claim on the basis that prison officials failed to protect him from false "attacks" by the CI. To establish an Eighth Amendment violation based on a failure to protect, an inmate must show that a prison official acted with deliberate indifference to his "health or safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). False accusations of misconduct by a fellow inmate that lead to disciplinary charges, as the plaintiff alleges here, do not present the kind of threat as to which a prison official has a duty to protect an inmate. Rather, the duty to protect extends to known threats to an inmate of physical "violence at the hands of other prisoners." *Id*. "Erroneous allegations of misconduct by an inmate do not constitute a deprivation of a constitutional right." *Reeves v. Mohr*, 2012 WL 275166 at *2.

## Conclusion

For all of the reasons stated above, the plaintiff's complaint fails to allege any plausible constitutional claim on which he may be granted relief under §1983, and his complaint is accordingly dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[1] The plaintiff's motion for an

---

[1] Because the court finds dismissal against all defendants warranted on the basis that it fails to state any colorable constitutional claim, it is not necessary for the court to address any other,

-9-

Case No. 1:18CV2417
Gwin, J.

"Order to Show Cause for a Preliminary Injunction" (Doc. No. 3) is also denied as the court finds the plaintiff has no likelihood of success on the merits of any of his claims. *See Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 632 (6the Cir. 2000) (upholding denial of motion for preliminary injunction where the plaintiff has no likelihood of success on the merits).

Pursuant to 28 U.S.C. § 1915(a)(3), the court further certifies that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Dated: March 8, 2019                    *s/    James S. Gwin*
                                                                            JAMES S. GWIN
                                                                            UNITED STATES DISTRICT JUDGE

---

further grounds that may exist for dismissing the plaintiff's claims against the various defendants.